# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MARY JANE WALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.   CIV-11-334-RAW-SPS** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the Social** | ) | |
| **Security Administration,[1]** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

The claimant Mary Jane Wall requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled.  As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

_____

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on April 24, 1964, and was forty-six years old at the time of the administrative hearing. She has a high school education and past relevant work as a production worker and certified nursing assistant (Tr. 23, 38). The claimant alleges that she has been unable to work since March 26, 2008 (Tr. 14).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on September 11, 2008. The Commissioner denied her application. ALJ John W. Belcher initially determined that the claimant was not disabled in a written opinion dated June 25, 2010. The Appeals Council denied review of the ALJ's decision, so the opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following additional limitations: i) she can lift, carry, push, and pull ten pounds occasionally and less than five pounds frequently; ii) she cannot climb ladders, ropes, or scaffolding; iii) she can occasionally climb stairs,

balance, bend, stoop, kneel, crouch, crawl, and reach over her head with her right hand; and iv) she must avoid concentrated exposure to fumes, odors, dusts, toxins, gasses, and poor ventilation, and that claimant should avoid performing a power grip or torqueing and twisting with her hands (Tr. 12). Due to mental limitations, the ALJ also found that the claimant could perform only simple tasks in a habituated work setting with only superficial contact with co-workers, supervisors, and the general public (Tr. 13). While the ALJ found that the claimant was unable to perform her past relevant work, he nonetheless found that she was not disabled because there was other work the claimant could perform in the national economy, *i. e.*, assembly worker and grinding machine operator (Tr. 24-25).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze the claimant's mental impairments at step three; ii) by failing to properly analyze the treating physician opinions of Dr. Judy Trent, D.O. and Dr. Steven Delia, M.D.; (iii) by failing to properly analyze the claimant's credibility; and (iv) by relying on vocational expert testimony that was not inclusive of all the claimant's impairments. The undersigned Magistrate Judge finds that the ALJ did fail to perform a proper step five analysis and did not properly analyze the treating physician opinions of Dr. Trent and Dr. Delia.

The claimant began receiving treatment from Dr. Judy Trent, D.O., at least as early as November 2006, but possibly as early as October 22, 1994 (Tr. 449, 454). Dr. Trent completed a Multiple Impairment Questionnaire on September 22, 2008 in which

she identified claimant's physical impairments to include allergic rhinitis, asthma, hypertension, hyperlipidemia, chronic low back pain secondary to degenerative disc disease, and right shoulder pain (Tr. 454). Dr. Trent found that claimant could sit for two hours in an eight-hour workday, stand/walk for one hour in an eight-hour workday, and claimant could not stand/walk continuously (Tr. 456-57). Dr. Trent further opined that the claimant could frequently lift up to five pounds, occasionally lift up to twenty pounds, frequently carry up to five pounds, and occasionally carry up to ten pounds (Tr. 457). Additionally, Dr. Trent wrote that was unable to perform repetitive activity with her right arm according to the following categories related to her right arm: i) marked limitations in grasping, turning, and twisting objects; ii) marked limitations in using her fingers and hands for fine manipulation; and marked limitations in using her arms for reaching (Tr. 457-58). Dr. Trent also found that claimant would need hourly fifteen-minute breaks and that claimant could not push, pull, bend, and stoop, and she would need to avoid fumes, gases, temperature extremes, and dust (Tr. 459-60). Dr. Trent reiterated her findings from the Multiple Impairment Questionnaire in a letter submitted on April 2, 2010 (Tr. 628). In addition, Dr. Trent wrote that claimant's "symptoms would likely increase if she were placed in a competitive work environment" and wrote that claimant's pain and fatigue are "severe enough to interfere with attention and concentration" (Tr. 628).

State examining physician Dr. Traci Carney, D.O. performed a physical examination on claimant on November 15, 2008 (Tr. 475-82). The claimant told Dr. Carney that she had sharp pain that radiates down the right side of her body, and that her

pain worsens with lifting or bending (Tr. 475). She reported injuring her right shoulder, the shoulder pain worsens with moving and riding, and she experiences numbness in her hands due to the shoulder pain (Ter. 475). Upon examination, Dr. Carney found that claimant had decreased range of motion in her right shoulder with elevation and paraspinal muscle tenderness, and diagnosed claimant with low back pain, degenerative disc disease at L4-L5 and mild acquired spondylosis at L3-L4, right shoulder pain (evidenced by a positive Neri's sign suggesting impingement syndrome), hypertension, allergic asthma, and depression and anxiety (Tr. 478).

The claimant argues that the ALJ relied on improper vocational expert testimony in his step five findings that claimant was capable of performing the jobs of assembly worker and grinding machine operator.[3] The undersigned agrees that the ALJ erred in his step five findings. First, the ALJ's hypothetical to the VE failed to include the limitation of only occasional reaching above her head with her right hand (Tr. 18, 58). *See, Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("'[T]estimony elicited by hypothetical questions that do not relate with precision all of claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'"), *quoting Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990).

---

[3] The ALJ states in his decision that the claimant is capable of performing the job of grinding machine operator, but the VE offered the DOT number corresponding to fringing machine operator in testimony, which the parties seem to have adopted for their arguments. In any event, while the job of grinding machine operator, identified at DICOT § 690.685-194, *is* classified as sedentary, it also requires frequent reaching. Given the ALJ's RFC findings at step four that claimant would be limited in her ability to reach overhead, it is not clear whether the claimant would be capable of performing this occupation.

Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704 at *4 (SSA 2000) [emphasis added]. Although the VE testified that there was no conflict between his testimony and the DOT, there *is* a conflict that the ALJ was required to resolve. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

First, a conflict exists because the ALJ failed to identify in his written opinion specific jobs in the DOT that the Court could review and compare to the imposed limitations. *See Carpenter v. Astrue*, 537 F.3d 1264, 1270-1271 (10th Cir. 2008) ("The ALJ is obligated to explain conflicts between a VE's testimony and a job description in the DOT, however, and therefore must elicit *enough vocational evidence* for this court to determine whether there is a conflict.") [emphasis added].

Second, the claimant's hearing representative submitted a letter dated June 25, 2010, just over two weeks after the administrative hearing, which identified the jobs cited

by the VE and their corresponding DOT numbers.[4]   Both jobs appear to require

exertional levels of light work, *not* modified sedentary work as the ALJ found at step

four.   DICOT §§ 685.686-101, 732.687-010.   *See Herbert v. Barnhart*, 2002 WL

31180762 at *8-9 (D. Kan. Sept. 19, 2002) (reversing and remanding to ALJ, partially

because the identified jobs of cashier and ticket seller required frequent reaching,

handling, and fingering which appeared to be in conflict with the claimant's RFC

restrictions from rapid, repetitive use of hand controls) [unpublished opinion].   While the

specific jobs referenced by the VE were identified at the administrative hearing, the ALJ

failed to ask the VE to reconcile the clear conflicts between the jobs and his RFC

findings.   The ALJ therefore committed reversible error in violation of this court's

holding in *Haddock*.   *See also Krueger v. Astrue*, 337 Fed. Appx. 758, 760-762 (10th Cir.

2009) (reversing and remanding in part because ALJ failed to resolve conflict between

VE's testimony and DOT job descriptions); *Hackett v. Barnhart*, 395 F.3d 1168, 1175

(10th Cir. 2005) (applying *Haddock* to nonexertional limitations); *Poppa v. Astrue*, 569

F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00-4p "requires that an ALJ must

inquire about and resolve any conflicts between a [VE's] testimony regarding a job and

---

[4] Again, it is not clear whether the ALJ meant to refer to the occupation of grinding machine operator as written in his decision or fringing machine operator per the VE's testimony.  In any event, there still exists a conflict that must be resolved by the ALJ pertaining to both jobs.  The job of grinding machine operator, automatic, DICOT § 690.685-194, requires frequent reaching, which was a limitation that the ALJ found to exist to some degree at step four.  The job of fringing machine operator, DICOT § 685.686-010, is classified as light work, which clearly conflicts with the ALJ's finding that claimant could perform modified sedentary work, as explained.

the description of that job in the [DOT]").  Although these unresolved conflicts as to these limitations would have been harmless error if other jobs had been identified that did not pose a conflict, they are not harmless here because there are no other jobs identified. *See Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding any error on whether claimant could perform job was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.") [unpublished opinion].  In *this circuit* the ALJ must resolve any apparent conflict between the VE's testimony and the DOT.  *See Burns v. Barnhart*, 312 F.3d 113, 126 n.8 (3rd Cir. 2002) (discussing Circuit split); *compare Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) ("To the extent that there is any implied or indirect conflict between the [VE's] testimony and the DOT in this case . . . the ALJ may rely upon the [VE's] testimony provided that the record reflects an adequate basis for doing so.") *and Jones v. Apfel*, 190 F.3d 1224, 1229-1230 (11th Cir. 1999) ("We agree with the Sixth Circuit that when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT."), *with Smith v. Shalala*, 46 F.3d 45, 47 (8th cir. 1995) ("[W]hen expert testimony conflicts with the DOT, the DOT controls.") *and Haddock*, 196 F.3d at 1091 ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

In addition, the claimant contends that the ALJ failed to properly analyze the treating physician opinion of Dr. Judy Trent, D.O. The undersigned agrees that the ALJ's analysis of Dr. Trent's opinion falls short of the analysis required under 20 C.F.R. § 404.1527(c). In discrediting Dr. Trent's opinion, the ALJ points to a notation in the questionnaire that indicates that Dr. Trent considered the limitations identified applicable back to 1999, when claimant was working in a factory. In rejecting Dr. Trent's opinion on this basis alone, however, the ALJ ignores the other factors outlined in 20 C.F.R. § 1527(c)(1)-(6), such as treatment relationship and supportability with respect to the medical evidence. Of particular concern is that the ALJ discredited Dr. Trent's opinion while apparently relying on Dr. Carney's, but failed to explain the weight he was assigning to Dr. Carney's opinion *and* why Dr. Carney's opinion outweighed the opinion of Dr. Trent. *Both* opinions suggest limitations related to the claimant's ability to use her right arm, and the ALJ should explain why he adopted the findings of Dr. Carney over Dr. Trent's findings.

Because the ALJ failed to reconcile the conflicts present between the jobs identified by the VE and the DOT *and* failed to properly analyze the medical evidence of record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 13th day of March, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma